

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 26, 2022

**BY EMAIL AND ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

    Re:   *United States v. Jaime Marquez Rodriguez*, 20 Cr. 670 (VEC)

Dear Judge Caproni:

    The Government respectfully submits this letter in advance of the sentencing of Jaime Marquez Rodriguez ("Rodriguez" or the "defendant") in the above-referenced matter, currently scheduled for February 9, 2022 at 10:00 a.m. On August 3, 2021, the defendant pled guilty, pursuant to a plea agreement with the Government (the "Plea Agreement"), to one count of narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). The parties stipulated in the Plea Agreement that 78 to 97 months' imprisonment is the applicable guidelines range (the "Stipulated Guidelines Range"). For the reasons set forth below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

**I.  Background**

    The prosecution arises out of a negotiated narcotics transaction whereby the defendant and his co-defendant, Vachon Combs,[1] agreed to purchase from a law enforcement confidential source ("CS-1") approximately four kilograms of cocaine in exchange for approximately $160,000, and accept from CS-1 an additional kilogram of cocaine "on consignment." (Final Presentence Investigation Report, dated November 24, 2021 (the "PSR") ¶ 13). The defendant and CS-1 discussed the terms of this transaction on or about November 11, 2020, and over the course of the following week. (PSR ¶¶10-14). On or about November 19, 2020, CS-1, the defendant, and Combs met at a particular location in the Bronx, inside a vehicle ("Vehicle-1"). (PSR ¶¶ 15-16). During the meeting, after additional conversation about the transaction, the defendant instructed Combs to show CS-1 the money, whereupon Combs reached below his seat and provided CS-1

---

[1] Combs also pled guilty to one count of narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). He is scheduled to be sentenced on February 2, 2022.

with a bag containing approximately $150,000 [2] in cash, in exchange for the purported approximately four kilograms of cocaine. (PSR ¶¶ 16, 17). Thereafter, CS-1 and Combs discussed CS-1 providing Combs with an additional kilogram on consignment, *i.e.*, providing the kilogram of cocaine on the understanding that CS-1 would be repaid for the purchase price (approximately $40,000) with proceeds from selling the cocaine. (PSR ¶ 17). CS-1 stated that Combs should only accept the additional kilogram of cocaine if he would be able to sell it and repay CS-1 by 5:00 p.m. the following day, on November 20, 2020. (PSR ¶ 18). The defendant and Combs discussed this timeline, including calling another individual, before accepting the additional kilogram of cocaine based on that condition. (PSR ¶ 19). At that point, the defendant and Combs were arrested.

On November 20, 2020, the defendant and Combs were charged by complaint with narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A). (*See* Dkt. No. 1). On or about December 8, 2020, a grand jury sitting in this District returned an indictment containing the same charges. (*See* Dkt. No. 10).

The defendant has been in custody since his arrest in November 2020.

## II. Stipulated Guidelines Range and the PSR's Recommendation

On August 3, 2021, the defendant pled guilty, pursuant to the Plea Agreement, to a single count of narcotics conspiracy, to the lesser included offense of violating 841(b)(1)(B). The Plea Agreement calculated a Stipulated Guidelines Range of 78 to 97 months' imprisonment, based on a total offense level of 27 and a criminal history category of II. The PSR reaches the same Guidelines calculation. In the PSR, the United States Probation Department ("Probation") recommends a sentence of 78 months' imprisonment, at the bottom of the Guidelines range. (*See* PSR at 22-23).

## III. Discussion

### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

---

[2] Part of the agreed-upon transaction was that $10,000 of the $160,000 total would be provided to other members of the drug-trafficking organization supplying the cocaine. (PSR ¶ 13 n.2).

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B. The Court Should Impose a Sentence That Is Within the Stipulated Guidelines Range

The nature and seriousness of the defendant's offense, the need to promote respect for the law, to provide just punishment, and to afford adequate deterrence all weigh in favor of a substantial sentence.

The instant conviction is the defendant's second federal narcotics conviction. Moreover, he committed both crimes while in the United States illegally. The defendant was removed from the United States on or about July 28, 1997 and on or about July 18, 1998. (PSR ¶ 46). Despite that, thereafter he illegally reentered the United States and engaged in criminal conduct. On or about April 20, 2000, the defendant was convicted, in the United States District Court for the Southern District of California, of importation of methamphetamine into the United States, in violation of Title 21, United States Code, Sections 952 and 960, as well as attempted illegal reentry,

in violation of Title 8, United States Code, Section 1326. (PSR ¶¶ 43, 44). For those offenses, he was sentenced principally to 96 months' imprisonment for the narcotics offense, and 24 months' imprisonment for the attempted illegal reentry, to run concurrently with the sentence for the narcotics offense; the sentence also included a five-year term of supervised release. Nonetheless, after serving this significant prison sentence and being deported, the defendant illegally reentered the United States multiple times and committed another serious narcotics offense in this country.

The defendant's two federal narcotics convictions were separated by nearly two decades. However, they followed the same pattern: the defendant, having been deported, illegally reentered the United States and engaged in serious narcotics crimes. After having been sentenced to a lengthy period of incarceration—at 96 months' imprisonment, near the top of the Stipulated Guidelines Range—and again illegally reentering the United States at least twice, now in his 40's, the defendant was undeterred and attempted to buy approximately five kilograms of cocaine. Moreover, that he and Combs accepted the additional kilogram of cocaine on consignment from CS-1 with the express condition that he (and Combs) agree to by CS-1 by 5:00 p.m. the following day makes clear that the defendant intended to purchase cocaine to sell it, and that he possessed at least some capability to sell a significant amount of cocaine quickly. That the defendant remained ready, willing, and able to do this demonstrates that his significant previous prison sentence did not adequately deter him from committing additional narcotics crimes, and underscores the need for just punishment. That said, to his credit, in the Government's view, the defendant quickly accepted responsibility for committing this crime and has not sought to minimize his conduct.

The Government does not seek to discount that the defendant's long-term partner and four children living in the United States (*see* PSR at 23) likely is a significant pull to the United States for him; however, driving the Government's position is driven by the fact that he committed serious crimes while in this country. Ultimately, the seriousness of the defendant's conduct and his recidivism weigh in favor of a substantial sentence. Accordingly, and for the reasons set forth above, the Government submits that a sentence within the Stipulated Guidelines Range of 78 to 97 months' imprisonment is sufficient but not greater than necessary to serve the purposes of sentencing.

    Respectfully submitted,

    DAMIAN WILLIAMS
    United States Attorney

By: _____/s/_____
    Jacob Gutwillig
    Assistant United States Attorney
    (212) 637-2215

cc:    Judith Vargas, Esq. (by Email and ECF)